ASOCIACIÓN DE DUEÑOS DE CASAS VERANIEGAS DE LA PARGUERA, peticionarios, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE SAN JUAN, HON. TELESFORO ROSA RESTO, JUEZ, demandado; COMISIÓN DE SERVICIO PÚBLICO DE PUERTO RICO, interventora.

*Número*: O-72-75   *Resuelto*: 16 de enero de 1974

J. R. *Rodríguez Rivera, Procurador General Interino, Roberto Armstrong, Procurador General Auxiliar,* y *E. Sánchez Soliván,* abogado de la Comisión de Servicio Público, abogados de la interventora; *Carlos E. Colón,* abogado de los peticionarios.

EL JUEZ ASOCIADO SEÑOR DÍAZ CRUZ emitió la opinión del Tribunal.

(EN RECONSIDERACIÓN)

Este caso se inicia en el 1969 ante la Comisión de Servicio Público como parte del esfuerzo gubernamental por preservar y proteger el balance ecológico que propicia la rarísima vida marina de la bahía fosforescente de La Parguera, en el suroeste de Puerto Rico. La Comisión requirió la remoción de

117 casas y casas botes instaladas en el litoral de la zona marina de La Parguera, y como rehusaran los conminados a acatar la orden, les concedió audiencia celebrándose vistas en Mayagüez en las que presentaron evidencia y argumentos todas las partes, y finalmente en 13 de noviembre de 1970 dictó Resolución y Orden disponiendo la eliminación de dichas estructuras. De la resolución recurrieron los querellados dueños de casas por revisión al Tribunal Superior, Sala de San Juan, donde plantearon como cuestión de entrada la nulidad de la orden de la Comisión por no haberse ajustado el procedimiento ante dicha agencia al debido proceso de ley. Denegada su moción, recurrieron en *certiorari* ante este Tribunal que expidió el auto, y el 15 de mayo de 1973 en opinión *per curiam* anuló la resolución de la Comisión de Servicio Público revisada y devolvió el caso a dicho organismo "a fin de que sus miembros, una vez preparada, lean la transcripción de los testimonios orales recibidos, debiendo además concederse una nueva oportunidad a las partes para que presenten informes escritos u orales para ser oídos o leídos por la Comisión en pleno, efectuado lo cual procederá ésta a adoptar el acuerdo que corresponde."

Resolvemos ahora una bien fundada moción de reconsideración de la interventora Comisión de Servicio Público.

La interventora no percibió el ataque de los recurrentes, cuya punta de lanza es el debido proceso de ley. Al oponerse a la expedición del auto y luego en su alegato lo hizo en base a su prematuridad por faltar parte del récord, especialmente la transcripción de la evidencia oral pero absteniéndose de señalar si esa parte del récord que faltaba por considerar demostraría que los recurrentes habían tenido una vista ajustada al requisito jurisdiccional de debido procedimiento. Quedaba de hecho sin impugnar la alegación frontal de los recurrentes de invalidez constitucional que a duras penas podía cubrirse con la presunción de regularidad. La posición del Estado en este incidente vital fue reticente y doctrinaria,

reservando hechos que de conocerse hubiesen puesto en contienda la alegación de irregularidad insalvable en los procedimientos, y que hubiesen provisto al juez de instancia de mayor fundamento que la incierta probabilidad de que al completarse el récord surgieran a la luz los detalles factuales que podían insuflar vida de legalidad al hostigado proceso. Como resultado de esta preterición de la realidad procesal, cuando tomamos el caso para decidir este Tribunal se enfrentó a un cuadro de proceso administrativo dislocado: los Comisionados de Servicio Público no habían estado presentes en las vistas orales ni tampoco habían leído el récord taquigráfico pues éste no se había transcrito; los examinadores no habían preparado conclusiones ni rendido informe; y no aparecía medio ni método racional alguno por el cual llegó a los comisionados conocimiento de los hechos objeto de adjudicación en la resolución y orden adoptadas disponiendo la eliminación de las casas de los recurrentes. No es hasta la solicitud de reconsideración que la recurrida Comisión de Servicio Público finalmente saca del recinto secreto la verdad factual con que mucho antes debió enfrentar la ofensiva de los recurrentes y ofrece a este Tribunal, avalada por el juramento de los miembros integrantes de la Comisión de Servicio Público que intervinieron en el proceso decisional y adjudicativo Sres. Godofredo N. Gaetán, Presidente, y Andrés E. Salas Soler y Rafael Rivera Lugo, Comisionado Asociados; y los examinadores que actuaron en las audiencias Sres. Sigfredo A. Irizarry y José A. Anglada Segarra, una extensa relación de cuyo texto relevante a la cuestión jurisdiccional de aproche transcribimos:

"Los examinadores que presidieron las audiencias sometieron a la Comisión todos los exhibits, estipulaciones y escritos relacionados con el caso y le hicieron a la Comisión un resumen verbal de la prueba testifical antes de que la misma se transcribiera. Además, sometieron a la Comisión un resumen escrito de la totalidad del caso y sus recomendaciones sobre cómo resolverlo *en*

*forma de una propuesta Resolución y Orden* (con conclusiones de hechos) que dichos examinadores redactaron, discutieron con la Comisión, la Comisión le hizo correcciones y alteraciones según su propio criterio, y la Comisión dispuso que se pasara en forma final para luego adoptarla, como de hecho la adoptó, emitiéndola como *su decisión unánime* en el caso." (Subrayado en el original.)

En su escrito de oposición a la solicitud de reconsideración, los recurrentes por primera vez hacen pausa en su ataque y ante la inexpugnable expresión bajo juramento de los funcionarios públicos antes transcrita, hacen gala de honestidad intelectual y ética al declarar: "Bajo ninguna circunstancia se nos debe interpretar que estamos poniendo en duda o en tela de juicio las declaraciones juradas de los distinguidos compañeros que' se acompañan a la moción de reconsideración." (Escrito de Oposición de 7 de junio de 1973, pág. 2, escolio 1.)

Lamentamos este demorado descubrimiento de hechos esenciales a la función revisadora de este Tribunal. La trascendencia social y el gran interés público que dan relieve a este caso reclaman una pronta acción rectificadora sin ulteriores reflexiones sobre fallas en la percepción de la cuestión central a decidir. Debemos reconsiderar nuestra opinión y sentencia *per curiam* de 15 de mayo de 1973. El proceso administrativo, actualmente en la etapa de revisión ante el Tribunal Superior, debe seguir su curso hasta una decisión final sobre los numerosos planteamientos de la parte recurrente.

■ Se ajustó a derecho el tribunal de instancia al resolver que los procedimientos ante un organismo administrativo tienen a su favor una presunción de regularidad y corrección que debe ser respetada mientras la parte que la impugne no produzca suficiente evidencia para derrotarla. *United States v. Chemical Foundation*, 272 U.S. 1, 14–15; 71 L.Ed. 131 (1926). El procedimiento para audiencias establecido en el Art. 49 de la Ley creando la Comisión de Servicio Público que es la Núm. 109 de 28 de junio de 1962 (27

L.P.R.A. sec..1260) no tiene la exigencia estatutaria de que los comisionados oigan y reciban personalmente la prueba, práctica seguida en *Luce & Co.* v. *Junta de Salario Mínimo,* ([1]) 62 D.P.R. 452, 478 (1943). Se responde así a la realidad de que generalmente los examinadores, por entrenamiento especial y experiencia, están mejor preparados para oír y adjudicar que los propios comisionados, ocupados principalmente en guiar la política pública de la agencia. En ausencia de requisitos específicos dispuestos por la Asamblea Legislativa, el debido proceso de ley en el trámite administrativo se cumple y satisface aun cuando no se transcriban las notas taquigráficas de la vista, ni se sometan determinaciones de hecho y conclusiones por los examinadores, ni hagan éstos un resumen o compendio escrito de la prueba para los comisionados, bastando en muchas ocasiones un informe oral de los examinadores a los miembros de la Junta o Comisión. "Partiendo de la premisa de que las cortes al revisar deben pasar sobre el grado de ponderación de la evidencia por los oficiales que deciden las cuestiones de hecho, el requisito mínimo podría ser que dichos oficiales oigan los testigos declarar, lean personalmente toda o parte de la transcripción de evidencia, que a través de informes escritos o verbales de sus subalternos se familiaricen con las cuestiones y evidencia relevante, o que firmen la resolución y orden confiando en la labor de sus subalternos, prescindiendo de la evaluación personal de cuestiones y prueba. Hay autoridad para sostener cada uno de estos cuatro requisitos mínimos, aunque el péso de las autoridades impone como mínimo que quien decida deba de alguna manera desarrollar su propia comprensión de

---

([1]) En las audiencias de *Luce & Co.* se prescindió de examinadores y los propios miembros de la Junta se turnaban en la labor de oír la prueba, método ya descartado como lesivo a la integridad del proceso administrativo toda vez que excluye la valiosa aportación de examinadores excepcionalmente aptos y especializados y abruma los miembros de la Junta con labor que excede su capacidad física de trabajo y limita su función normativa y de implementación de política pública en el amplio ámbito de la agencia.

las cuestiones envueltas y de la evidencia pertinente. Sin embargo, no importa cuál sea el requisito mínimo, los tribunales de revisión con frecuencia están impedidos de investigar hasta qué grado los que deciden consideraron la evidencia." Davis, *Administrative Law Treatise*, Vol. 2, sec. 11.02, pág. 38, ed. 1958.

La norma de "debido proceso de ley" no tiene en el campo del derecho administrativo la rigidez que se le reconoce en la esfera penal. *Atiles, Admor.* v. *Comisión Industrial*, 63 D.P.R. págs. 62, 63 (Snyder, J.) (1944). La decisión administrativa es institucional en el sentido de que es la decisión de una agencia u organismo, y no la de un individuo ni la de los jefes de la propia agencia. La decisión de un juez que preside una vista es personal. El juez recibe la evidencia y los informes y decide el caso. En el proceso administrativo la prueba se practica ante un examinador, éste u otro subalterno pueden cernir la evidencia, especialistas en diversas disciplinas del personal de la agencia pueden contribuir a la redacción de informes finales; y el jefe de agencia, como cuestión de realidad, puede descansar tan pesadamente en el trabajo de esos subalternos al extremo de conocer poco o nada de los problemas presentes en muchos de los casos que se resuelven en nombre de la agencia. Davis, *opus*, Vol. 2, sec. 11.01, pág. 36. Hay casos en que puede hasta suprimirse la vista oral sin violar la Constitución, como sucede ante una admisión por la parte querellada de hechos que la ley expresamente prohíbe. *Denver Union Stockyard Co.* v. *Producers L. M. Ass'n.*, 356 U.S. 282 (1958) (2 L.Ed. 771). En el presente caso sería fútil una vista evidenciaria para establecer algunos de los hechos imputados en la contención del Estado como lo son que los dueños de casas querelladas carecían de permisos de la Comisión de Servicio Público y del Departamento del Ejército para instalar y edificar sus estructuras en el litoral de La Parguera pues la falta de permisos fue estipulada por las partes ante la Comisión. Sí era necesaria la vista para esta-

blecer hechos (navegabilidad de las aguas, zona de ubicación, etc.) en que fundan los querellados su contención de que esos permisos son innecesarios. Fundamental al debido proceso es que la parte querellada tenga una clara e informada noción de cuál sea la contención del Gobierno y del propósito que dirige el interés público. *Morgan II* v. *United States*, 298 U.S. 468, 80 L.Ed. 1288 (1935). No se vulnera la legalidad del proceso cuando las contenciones del Gobierno, están como en el presente caso, definidas con claridad, *N.L.R.B.* v. *Mackay Radio & Telegraph Co.*, 304 U.S. 333 (1938), tan definidas que los querellados han estipulado la ausencia de permisos y levantado no menos de nueve defensas afirmativas contra la acción gubernamental.

■- Esencial al debido proceso lo es también que los comisionados tomen una decisión informada, con conocimiento y comprensión de la evidencia ofrecida, sin que importe al caso el medio o mecanismo por el que esa inteligencia de la cuestión debatida llegue a su poder, que puede fluir cuando el comisionado no participa en las vistas, por lectura de la transcripción de la evidencia oral y examen de la documental; o informe, resumen, compendio, escrito u oral, o pliego de determinaciones de hecho sometidos por los examinadores a los comisionados. Davis *Administrative Law Treatise*, Vol. 2, sec. 11.21, pág. 126, ed. 1958.

■ Está generalmente aceptado que el comisionado puede confiar en un informe o resumen de un subalterno apto. "El requisito [de debido proceso] está vinculado a una inteligencia personal de la evidencia por parte del comisionado, no con la mecánica de que se vale para adquirir esa comprensión." En la práctica común los oficiales que deciden adquieren un entendimiento o comprensión de la evidencia no sólo de informes de subalternos, si que también de resúmenes y explicaciones en alegatos y argumentos orales de las partes. Davis, *opus*, Vol. 2, sec. 11.03, pág. 45.

■ Y es regla que el proceso mental seguido por el comisionado para llegar a la decisión, sus lecturas, reacción intelectual y el curso de formación de criterio no puede ser investigado como no puede escrutarse la función pensante de un juez en la evaluación de la evidencia. *United States* v. *Morgan IV*, 313 U.S. 409, 422, 85 L.Ed. 1429 (1941). En todo caso, la ley presume la corrección de los procedimientos administrativos y el Tribunal Superior es el foro apropiado [2] para recibir la evidencia que tengan los recurrentes para rebatir esa presunción de regularidad. Davis, *opus*, sec. 11.06, pág. 63.

Repetimos la expresión del Juez Snyder:

"Toca a la Legislatura determinar, como una cuestión de flexibilidad administrativa, cuán lejos desea ir en tales cuestiones, siempre que no se niegue el debido procedimiento." *Atiles, Admor.* v. *Comisión Industrial*, 63 D.P.R. 62, 64.

Este caso debe retornar al curso administrativo en etapa de revisión ante el Tribunal Superior momentáneamente interrumpido por *certiorari*. Dicho tribunal de instancia tiene dentro del marco de revisión plena facultad para conocer de y adjudicar las cuestiones suscitadas por los recurrentes considerando el "récord" completo del caso que incluirá la transcripción de la evidencia oral de las vistas celebradas. *Universal Camera Corp.* v. *N.L.R.B.*, 340 U.S. 474; 95 L.Ed. 456 (1951); confirmada en *Central Hardware Co.* v. *N.L.R.B.*, 407 U.S. 539, 548 (1972).

Ahora bien, en el quehacer administrativo, como en toda otra fase de actividad humana, no debemos conformarnos con metas mínimas sino aspirar a la plenitud y excelencia de la función gubernamental. El procedimiento seguido en este caso según relatado por los comisionados y examinadores,

---

[2] Nuestra función revisadora en casos administrativos se circunscribe a considerar si los fundamentos en que descansa la decisión de la agencia están acordes con los principios del derecho. *Port of Portland* v. *United States*, 408 U.S. 811, 842. (1972).

si bien satisface la norma constitucional sobre debido proceso de ley, al igual que el procedimiento de la mayoría de nuestras agencias administrativas, admite extensa mejora y reforma que sin recargar indebidamente el volumen de trabajo de los funcionarios concernidos, tienda a fortalecer ese fundamental derecho a ser oído que es ancla de nuestro sistema constitucional. A falta de legislación o reglamento interno, nada impide que por práctica se adopten conocidas normas presentes en la Ley Federal de Procedimiento Administrativo, 5 U.S.C.A. secs. 556, 557, propuestas en el proyecto de ley de Procedimiento Administrativo Uniforme para el Estado Libre Asociado de Puerto Rico, sometido a nuestra Legislatura y adoptadas en el reglamento de algunas agencias como el de la Junta de Relaciones del Trabajo de Puerto Rico (29 R.&R. P.R. secs. 64–10; 64–11), a saber:

(a) Preparación por el examinador de un escrito comprensivo de determinaciones de hecho y conclusiones de derecho a que ha llegado luego de oír y recibir toda la evidencia practicada, con su recomendación respecto a cómo debe resolverse el caso.

(b) Copia de ese pliego de conclusiones podrá servirse a todas las partes interesadas para que en un plazo adecuado que se fijará sometan, si lo estiman propio, objeciones, enmiendas, o comentarios.

(c) Cuando circunstancias excepcionales lo justifiquen podría oírse argumento oral por la Junta o uno de sus miembros sobre las objeciones a las determinaciones y conclusiones de los examinadores.

Así ganará en cabalidad y eficiencia la función de nuestras agencias administrativas, laboratorio donde el criterio técnico, el método científico y el ordenado acopio de datos, han de producir las decisiones correctas para bien del pueblo en general.

*Se dejará sin efecto la sentencia de este Tribunal de 15 de mayo de 1973, se anulará el certiorari expedido indebida-*

*mente y se devolverá el caso al tribunal de instancia para continuación de procedimientos consistentes con esta opinión.*

El Juez Asociado Señor Cadilla Ginorio disintió y expresó que se reservaba el derecho a radicar por escrito opinión disidente. El Juez Asociado Señor Irizarry Yunqué no intervino.

