# 97 DTA 113

**TRIBUNAL DE CIRCUITO DE APELACIONES
CIRCUITO REGIONAL VII DE CAROLINA Y FAJARDO**

RALPH J. SIERRA Y MARTA MUNTANER Y LA SOCIEDAD
LEGAL DE GANANCIALES COMPUESTA POR AMBOS
Interventor-Recurrente

v.

JUNTA DE PLANIFICACION DE P.R.
Recurrida

CORPORACION INMOBILIARIA ESPIRITU SANTO, INC., ETC.
Proponentes-Recurridos

Núm. KLRA-96-00334

San Juan, Puerto Rico, a 14 de mayo de 1997

Panel integrado por su Presidente, Juez Arbona Lago
y los Jueces Negroni Cintrón y Salas Soler

## TEXTO COMPLETO DE LA RESOLUCION

A la solicitud de revisión judicial radicada por el interventor-recurrente se provee No Ha Lugar. Entendemos que la Resolución recurrida es sustancialmente correcta.

**Antecedentes**

La Corporación Inmobiliaria Espíritu Santo, Inc. y el Sr. Antonio Torres Montes, por conducto del

Sr. Edwin López Torres, sometieron ante la Junta de Planificación una consulta de ubicación para el establecimiento de un proyecto comercial extenso, que consiste en la formación de cuatro (4) solares, en los que se proyecta la construcción de estructuras dedicadas a la venta de comidas de preparación rápida. Se solicitó ubicar el proyecto comercial en dos fincas que radican en la Carretera Estatal Número 3, Intersección con la Carretera Estatal Número 186, en el Barrio Jiménez del Municipio de Río Grande. Dichas fincas están comprendidas en un distrito de baja densidad poblacional (R-D y R-1).

El 27 de marzo de 1996 la Junta de Planificación analizó y evaluó la solicitud de ubicación y determinó dejarla en suspenso hasta tanto se sometieran los comentarios de los organismos gubernamentales con ingerencia en este tipo de proyecto, se cumpla con la Ley Sobre Política Pública Ambiental de Puerto Rico y se sometan los documentos para celebrar vista pública.

El 10 de junio de 1996 fue celebrada la vista pública en el Municipio de Río Grande. A la audiencia comparecieron vecinos y residentes del área; unos estuvieron a favor del proyecto propuesto y otros en contra.

La Junta de Planificación aprobó la consulta de ubicación. Acordó que es viable el desarrollo de los terrenos, condicionado a unos señalamientos y recomendaciones que deberán tomarse en consideración al someterse en la próxima etapa, la cual será atendida por la Administración de Reglamentos y Permisos, conforme al actual esquema de ley.

Los señalamientos de la Junta son:

*"1) Se autoriza un proyecto comercial que consiste en la ubicación y formación de cuatro solares con cabidas desde 1,720 hasta 2,500 metros cuadrados para la construcción de cuatro locales de comida rápida con un área de 2,812 pies cuadrados cada uno, para un total de 11,248 pies cuadrados de área de construcción.*

*2) La Administración de Reglamentos y Permisos determinará cuál será la próxima etapa en el trámite del proyecto, la cual deberá cumplir con todas las disposiciones de leyes, reglamentos y normas de planificación vigentes y aplicables, así como con las normas de dicha Administración.*

*3) Los espacios en las áreas de estacionamiento estarán provistos de árboles ornamentales. Cualquier parte de un área de estacionamiento que no se utilice para propósitos de estacionamiento o circulación tiene que recibir tratamiento paisajista.*

*4) Se coordinará con la Autoridad de Acueductos y Alcantarillados para la conexión del proyecto a su sistema de disposición de aguas servidas y para las mejoras o aportación que dicha agencia estime necesaria.*

*5) El movimiento de tierra a llevarse a cabo deberá mantener los rasgos topográficos lo más posible y limitarse el mismo a la porción de terreno que se considere en la aprobación del plano de construcción. Durante esta etapa se deberá mantener el área húmeda para evitar la generación de polvo fugitivo.*

*6) Se reforestarán las áreas verdes que sean despojadas de su cubierta vegetal como resultado de la construcción.*

*7) Se solicitará del Departamento de Recursos Naturales un permiso para movimiento incidental de tierra.*

*8) Cumplir con los requerimientos de las agencias incluyendo el Instituto de Cultura y la Junta de Calidad Ambiental.*

*9) Se utilizarán parámetros de diseño conforme un Distrito C-2.*

*10) Se cumplirá además con los espacios de estacionamiento reglamentarios."*

Los opositores Ralph J. Sierra y Marta Muntaner presentaron un escrito de reconsideración el 11 de septiembre de 1996, pero entendiendo que el mismo fue rechazado de plano, al no acogerse dentro del término de quince (15) días dispuesto por ley, acuden ante nos en tiempo hábil e imputan la comisión de los siguientes errores:

*"1- Erró la Junta al excluir totalmente el presente proyecto de las disposiciones del Plan de Uso de Terrenos de la Región Metropolitana de San Juan (PUT-RMSJ) y al autorizar la misma en violación a los requisitos impuestos por el artículo 14 de la Ley 75 del 24 de junio de 1975, según enmendada y las secciones 95.00 y 97.00 del Reglamento de Zonificación de Puerto Rico (Planificación Núm. 4).*

*2- Erró la Junta al autorizar la presente consulta ya que la decisión emitida no se justifica a base de la totalidad del expediente administrativo, el cual carece totalmente de aquella información, documentos y prueba requeridos por ley, por lo que la Junta carecía de jurisdicción para aprobar la misma.*

*3- Erró la Junta al autorizar la presente consulta como cuestión de hecho y de derecho, ya que la parte proponente carece de capacidad jurídica "standing" para presentar la misma.*

*4- El procedimiento llevado a cabo por la Junta en la presente consulta, violó el debido proceso de ley de la parte interventora-recurrente, ya que ésta no contó con la información necesaria que constituya una divulgación efectiva y completa de aquellos asuntos en discusión."*

## Exposición y Análisis

### I

En cuanto al primer error, entendemos que al recurrente no le asiste la razón. La Junta de Planificación evaluó la consulta y tomó la determinación a base de las disposiciones reglamentarias de un proyecto extenso (Sección 2.01 del Reglamento de Zonificación).

El Artículo 14 de la Ley Orgánica de la Junta, hoy Número 75 del 24 de junio de 1975, 23 L.P.R.A.§ 62 y subsiguientes, dispone que toda obra o proyecto a ser realizado por cualquier persona o entidad deberá estar de acuerdo con las recomendaciones de los planes de usos de terrenos, una vez adoptados por la Junta y aprobados por el Gobernador. Esta disposición debe ser implementada por las secciones 95.00 y 97.00 del Reglamento de Zonificación. Dichas secciones contienen los criterios y factores para considerar la ubicación de los Proyectos de Desarrollo Extenso.

Luego de evaluar extensamente este proyecto, la Junta de Planificación concluyó que la propuesta cumple con las normas, reglamentos y leyes aplicables a este tipo de desarrollo comercial, [1] correspondiendo entonces a A.R.P.E. atender los asuntos técnicos de la construcción.

En nuestra jurisdicción existe una arraigada norma de deferencia hacia las determinaciones de los organismos administrativos, como foros especializados que son. Por tal razón, los procedimientos ante las agencias administrativas están acompañadas de una presunción de corrección que sólo cede ante una fundamentada alegación de arbitrariedad, actuación ilegal o irrazonable. *Fuertes v. A.R.P.E.,* 134 D.P.R. \_\_\_ (1993), **93 J.T.S. 105.** Lo esencial, al ejercer nuestra función revisora es determinar si el dictamen administrativo está avalado por la prueba recibida y que la Agencia no haya incurrido en un abuso de discreción. *Agosto Serrano v. F.S.E.,* 133 D.P.R. \_\_\_ (1993), **93 J.T.S. 37;** *Bernabe v. Tribunal Superior,* 103 D.P.R. 692 (1975); *Pueblo v. Cabán Torres,* 117 D.P.R. 645, 648 (1986). El recurrente no expone fundamentos que ameriten intervenir con la decisión tomada por el foro administrativo, a la luz de la norma de interpretación señalada.

### II

Por estar relacionados el segundo y cuarto error, relativos a la suficiencia del contenido en el expediente administrativo, los discutiremos conjuntamente. Entendemos que ambos son improcedentes.

La Junta de Planificación de Puerto Rico tuvo ante sí los documentos necesarios y requeridos, y

fundó su dictamen en función de la totalidad del expediente. De igual forma, la parte interventora-recurrente contó con la información necesaria para plantear su oposición en forma efectiva y completa. La causa no presenta una situación que configure un caso de restricción impermisible en el grado de divulgación de información necesaria para argumentar y resolver que, a su vez, desemboque en insuficiencia en el récord para resolver conforme a derecho. El foro administrativo no quedó privado de elementos de juicio suficientes para resolver; del expediente surge que contó con ellos y adjudicó según sus normas y criterios, los que se encuentran sostenidos por la prueba establecida y recibida administrativamente.

La intervención judicial sólo se justifica cuando determinaciones de la Agencia no se encuentran sostenidas por prueba sustancial ante la totalidad del récord administrativo. Es sabido que no intervendremos con la apreciación y adjudicación de credibilidad que en relación con la prueba testifical haya realizado el juzgador de los hechos a nivel de instancia, excepto en casos en que un análisis integral de dicha prueba cause en nuestro ánimo una insatisfacción o intranquilidad de conciencia tal que estremezca nuestro sentido básico de justicia; correspondiéndole al apelante --de manera principal-- señalar y demostrar la base para ello. Lo contrario, esto es, la intervención indiscriminada con la adjudicación de credibilidad que se realiza a nivel de instancia, significará el caos y la destrucción del sistema judicial existente en nuestra jurisdicción. *Pueblo v. Cabán Torres, supra*, pág. 648. Es por ello que la histórica norma de deferencia en favor del juicio hecho en Instancia, encuentra su fortaleza en esa oportunidad superior que se tuvo allí para aquilatar la prueba testifical. *Ortiz v. Cruz Pabón*, 103 D.P.R. 939 (1975); *Pueblo v. Cabán Torres, supra*, pág. 654; *Pueblo v. Pellot*, 121 D.P.R. 791 (1988).

Se ha resuelto que el dictamen de un tribunal apelativo no puede basarse nunca en los hechos que le presenten las partes en sus alegatos, teniendo siempre que atenernos a las conclusiones de hecho del foro de instancia, a la transcripción de evidencia, o a la exposición narrativa de la prueba. *E.L.A. v. Mercado Carrasquillo*, 104 D.P.R. 784 (1976). La interpretación administrativa de un estatuto merecen gran peso. Ello es así por cuanto dichos organismos cuentan con una vasta experiencia y conocimiento (expertise) en relación con la materia con la que bregan día tras día. La interpretación que del estatuto éstos hagan y los fundamentos que aducen en apoyo de la misma, resultan de gran ayuda para los tribunales de justicia, al éstos encontrarse en la posición de tener que pasar juicio sobre la corrección de las decisiones emitidas por dichos organismos. *M & V Orthodontics v. Negdo. Seguridad de Empleo*, 115 D.P.R. 183, 189 (1984).

En el caso de autos, el recurrente interesa y nos invita, a que pasemos nuevo juicio, directamente, sobre las determinaciones de hecho que formuló la Junta durante la vista pública celebrada el 10 de junio de 1996 y sobre la Resolución adoptada y emitida en su reunión del 12 de agosto de 1996. No podemos acceder a ello. En *Aponte Correa v. Policía de Puerto Rico*, **96 J.T.S. 157** (resuelto el 17 de diciembre de 1996), el Tribunal Supremo reitera la norma establecida en cuanto a la delegación de poderes judiciales de las agencias administrativas:

*"La creación de diversas agencias administrativas y la delegación a éstas de poderes cuasijudiciales tuvo el propósito de proveer un sistema adjudicativo económico, rápido y práctico. Srio. D.A.C.O. v. J. Condóminos C. Martí, 121 D.P.R. 807, 821 (1988). Su fin último, claro está, es hallar la verdad y hacer justicia a las partes. Pérez Rodríguez v. P.R. Park Systems, Inc., 119 D.P.R. 634, 640 (1987). Se favorece que el proceso sea ágil y sencillo y propicie su uso eficiente por las personas legas. López Vives v. Policía de P.R., 118 D.P.R. 219, 231 (1987). Henríquez v. C.E.S., 120 D.P.R. 194, 202 (1987)."*

Es principio establecido que el debido proceso de ley ofrece también protección contra la arbitrariedad administrativa. *Henríquez v. C.E.S., supra.* Aunque en el pasado hemos reconocido que *"[l]a norma de 'debido proceso de ley' no tiene en el campo del derecho administrativo la rigidez que se le reconoce en la esfera penal". A.D.C.V.P. v. Tribunal Superior*, 101 D.P.R. 875, 882 (1974), sí requiere *"un proceso justo y equitativo que respete la dignidad de los individuos afectados". López Vives v. Policía de P.R., supra, 231.*

*Entre las garantías que conforman el debido proceso de ley, la jurisprudencia ha reconocido: la concesión de vista previa, oportunidad y adecuada notificación, derecho a ser oído, confrontarse con*

*los testigos, presentar prueba oral y escrita en su favor y finalmente la presencia de un adjudicador imparcial, Henríquez v. Consejo de Educación Superior, supra; Ortiz Cruz v. Junta Hípica, 101 D.P.R. 791, 795 (1973). La decisión administrativa ha de ser informada, con conocimiento y comprensión de la evidencia. A.D.C.V.P. v. Tribunal Superior, 101 D.P.R. 875, 883 (1974). Finalmente, deben efectuarse determinaciones de hecho y consagrar los fundamentos para la decisión administrativa. López v. Junta de Planificación, 80 D.P.R. 646, 667 (1958), Rivera Santiago v. Srio. de Hacienda, 119 D.P.R. 265, 274 (1987). Estas garantías están también reconocidas en la Ley de Procedimiento Administrativo Uniforme, Sec. 3:1, L.P.R.A., sec. 2151."*

No se ha presentado ante nos fundamento o motivo suficiente para que podamos intervenir con la decisión administrativa en el ejercicio de nuestra jurisdicción revisora; las determinaciones de la Junta se apoyan razonablemente en la totalidad de la evidencia que obra en el expediente administrativo. No podemos sustituir criterio en tal circunstancia.

## III

Por último, la aseveración de la parte recurrente al efecto de que la parte proponente-recurrida carece de capacidad jurídica para peticionar ante la Junta de Planificación, resulta inmeritoria.

La Sección 3.01 del Reglamento de Procedimientos Adjudicativos de la Junta de Planificación fija los criterios para determinar la capacidad jurídica.

Se trata aquí de cinco cuerdas de terreno propiedad del Sr. Antonio Torres y cinco cuerdas pertenecientes a la firma Inmobiliaria Espíritu Santo, Inc., que es una corporación íntima presidida por la Srta. Elsa Torres, hermana del Sr. Antonio Torres. Del récord se desprenden las escrituras correspondientes evidenciando la titularidad de los terrenos y las autorizaciones de ambos titulares dominicales avalando a Inmobiliaria Espíritu Santo, Inc. y al Sr. Edwin López a presentar la consulta. El dueño de los terrenos o su representante autorizado es persona autorizada que cumple con los requisitos de la sección 3.01 ■ para presentar y procesar la consulta ante la agencia.

### Dictamen

Conforme a lo expuesto, se deniega la expedición del recurso de revisión solicitado.

Así lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida I. Oquendo Graulau
Secretaria General

### ESCOLIOS 97 DTA 113

**1.** La Sección 97.03 del Reglamento de la Junta de Planificación establece los criterios que se habrán de utilizar en la evaluación de los proyectos de desarrollo comercial extenso. El primero de ellos requiere que la cabida del sujeto exceda del tamaño permitido para cambio de zonificación que en un Distrito C-2 alcanza a 2,000 metros cuadrados. Aunque el proyecto originalmente presentado no cumple con el mínimo de 52 espacios de estacionamiento para cada establecimiento comercial, un total mínimo de 208 para las cuatro estructuras propuestas (originalmente se ofrecen 171 estacionamientos repartidos entre las cuatro estructuras, a razón de 54, 35, 36 y 46), la Junta de Planificación ordenó que se rediseñase para cumplir con este segundo criterio, por lo que deberán añadirse 37 estacionamientos más. Surge también del expediente que la Junta analizó y determinó que la propuesta también cumple con el plan general de uso de terrenos en la región metropolitana de San Juan (PUT-RMSJ) y con los parámetros contenidos en la Política Pública del Plan de Uso de Terrenos de Puerto Rico (PUT-PR). El tercer criterio analizado por la Junta se refiere a la infraestructura existente en las inmediaciones del proyecto, con capacidad suficiente para atender las necesidades de las obras propuestas. A tal respecto la única dificultad que todavía el proyecto contempla se refiere a la descarga sanitaria. El proyectista solicitó originalmente la autorización de pozo séptico y la Junta de Planificación rechazó la oferta; no obstante, consideró que el asunto es uno de naturaleza técnica que debe ser atendido y resuelto adecuadamente ante A.R.P.E. De tal forma, la Junta de Planificación consideró y resolvió que en el área existe la infraestructura necesaria para atender las necesidades del proyecto. En cuanto al cuarto y último criterio, la celebración de vistas públicas con citación a todos los dueños de propiedades en un radio de 100 metros del sujeto, fue cumplida a cabalidad por la Junta y se dio audiencia a todos los interesados.

**2.** Sección 3.01 del Reglamento de Procedimientos Adjudicativos:

"*Las consultas, enmiendas, prórrogas y reaperturas podrán ser sometidas por el dueño de los terrenos o su representante autorizado, en casos de proyectos privados y por el jefe de la agencia, o su representante autorizado, en casos de proyectos públicos. La evidencia de propiedad lo será, tanto en proyectos privados como en proyectos públicos, la escritura correspondiente; debiendo someterse, además, en los proyectos privados, copia de la declaratoria de herederos y autorización de todos los herederos cuando los terrenos pertenezcan a más de una persona.*" (Énfasis suplido).