# 97 DTA 171

**TRIBUNAL DE CIRCUITO DE APELACIONES
CIRCUITO REGIONAL DE BAYAMON
PANEL I**

JUAN R. RAIMUNDI MELENDEZ
Querellante-Recurrido
v.

PRODUCTORA DE AGREGADOS
Querellada-Recurrente

Núm. KLRA-97-00131

San Juan, Puerto Rico, a 14 de agosto de 1997

Panel integrado por su Presidente, el Juez Sánchez Martínesz
y los Jueces Broco Oliveras y Urgell Cuebas

Broco Oliveras, Juez Ponente

## TEXTO COMPLETO DE LA RESOLUCION

Recurre ante nosotros Productora de Agregados (en adelante, Productora) solicitándonos que revoquemos la Orden de Cese y Desista de la Comisión de Servicio Público (en lo sucesivo la *"Comisión"*) el 7 de marzo de 1997. La misma, ordena a la recurrente a permitir el acceso a su cantera al recurrido, Sr. José R. Raimundí, quien opera camiones de carga de agregados en virtud de varios permisos otorgados por la Comisión. Además, ordenó a Prodductora de Agregados a pagar cuarenta y siete mil seiscientos dólares ($47,600) ▇ por concepto de los daños y perjuicios sufridos por el señor Raimundí a causa de las actuaciones de la recurrente.

Por entender que no erró la Comisión, denegamos la expedición del auto de revisión.

### I

El señor Raimundí es concesionario de tres autorizaciones de la Comisión para la carga y transporte de agregados en Puerto Rico. Sus clientes compran agregados a Productora y utilizan sus servicios para transportar el producto desde la cantera de la recurrente hasta los predios de sus empresas.

El 23 de enero de 1997, Productora no le permitió al señor Raimundí recoger la mercancía de sus clientes y, desde entonces, no le ha permitido la entrada a los terrenos de la cantera. Ante dicha situación, el señor Raimundí radicó una querella en la Comisión donde solicitó que se ordenara a Productora a permitirle la entrada a la cantera y a recoger el material comprado por los clientes del primero. En ésta alegó que el único motivo de Productora para impedir que el señor Raimundí y sus empleados entren a la cantera es que éste, en su carácter de Presidente de las Asociaciones de Transportistas del Norte y Camioneros de Volteo del Norte, radicó varias querellas contra Productora y las empresas del grupo Carmelo por violaciones a la Ley de Servicio Público, *infra.*

Productora presentó una Moción de Desestimación de la querella donde alegó que la Comisión no tenía jurisdicción para atender la controversia planteada. La Comisión procedió a señalar la correspondiente vista, no empece a la solicitud de Desestimación presentada por el recurrente. ▇

El 27 de febrero de 1997, la Comisión, a través de dos oficiales examinadoras, celebró la audiencia en la cual participaron tanto el querellante como el querellado a través de sus respectivas representaciones legales. Evaluada la evidencia presentada y los argumentos de ambas partes, la Comisión determinó que sí tenía jurisdicción sobre la persona del recurrente y sobre la materia planteada, y emitió la resolución recurrida la cual, como ya indicamos, ordenó a Productora a permitirle la entrada a los camiones del señor Raimundí para cumplir con la encomienda de sus clientes de recoger y transportar el material de agregados.

Inconformes, Productora nos señala en el presente recurso que la Comisión erró al:

*"...resolver que posee jurisdicción para reglamentar el acceso a la propiedad privada de una parte que no es concesionaria....ordenar el acceso de un tercero a la propiedad de la recurrente infringiendo los derechos constitucionales de la recurrente al disfrute de su propiedad constituyendo un despojo de la propiedad sin justa compensación en violación a la constitución. ...concluir que no existían circunstancias excepcionales para que Productora de Agregados prohiba el acceso al señor Raimundí....emitir una resolución que no está apoyada en el informe de las oficiales examinadoras que presidieron la vista.*

### II

La Ley de Servicio Público de Puerto Rico, Ley Núm. 109 de 28 de junio de 1962, según enmendada, 27 L.P.R.A. secs. 1001 *et seq.*, crea la Comisión y le confiere poderes generales con el ánimo de facultar y facilitar a ésta la implantación y administración de varias leyes de alto interés público. Ya desde el Informe del Senado de Puerto Rico de 31 de enero de 1962 sobre la Ley Núm. 109, *supra*, se reconoce la naturaleza compleja de la jurisdicción de la Comisión y que su intervención se extiende, de una u otra manera, a la comunidad puertorriqueña en general. Además, su campo de acción es vasto y en constante crecimiento.

La Ley Núm. 104 de 27 de junio de 1974 enmendó el Art. 14 de la Ley 109, 27 L.P.R.A. sec. 1101, referente a los poderes generales de la Comisión. En esencia, esta enmienda aclara que la Comisión no sólo tiene jurisdicción sobre personas o empresas concesionarias sino, además, sobre cualquier otra persona aunque ésta no ostente alguna autorización para prestar un servicio público. Sobre el particular dispone:

*(a)..........*

*(b) La Comisión estará, además, facultada para imponer multas administrativas y otras sanciones administrativas al amparo de esta Parte; para conducir investigaciones e intervenciones; para exigir cualquier clase de información que sea necesaria para el cumplimiento de sus facultades; para ordenar o solicitar a los tribunales que ordenen el cese de actividades o actos al amparo de la sec. 1262, de la sec. 1262 a, o de cualquier otra disposición de esta Parte; para imponer y ordenar el pago de costas, gastos y honorarios de abogado; así como el pago de gastos y honorarios por otros servicios profesionales y consultivos, incurridos en las investigaciones, audiencias y procedimientos ante la Comisión y para ordenar que se realice cualquier acto en cumplimiento de las disposiciones de esta Parte. Los poderes y facultades dispuestos en los incisos (a) y (b) de esta sección serán ejercitables no solamente en relación con las compañías de servicio público, porteadores por contrato, empresas de vehículos privados dedicados al comercio, personas que se dediquen al transporte turístico,..., y entidades que actúen como compañías de servicio público o como porteadores por contrato, sino también con respecto a:*

*(1).......*

*(2) Toda persona o entidad cuyas actuaciones afecten o puedan afectar la prestación de algún servicio público.*

*(3).......*

*(4) Toda persona o entidad cuyas actuaciones resulten en perjuicio de las actividades, recursos o intereses en relación con los cuales la Comisión tiene poderes de reglamentación, supervisión o vigilancia.*

El inciso (b) del transcrito artículo claramente concede a la Comisión amplios poderes y facultades para cumplir sus encomiendas. Entre los más significativos, observamos su facultad para realizar investigaciones, imponer multas y sanciones administrativas y ordenar el cese de actividades o actos contrarios a las leyes que administra. La Asamblea Legislativa, de otra parte, otorgó a la Comisión de Servicio Público la facultad de reglamentar la carga y el transporte de agregados en todo Puerto Rico. Ley Núm. 1 de 16 de mayo de 1972, 27 L.P.R.A. sec. 2002, mejor conocida como Ley de Transporte y Carga de Agregados.

Los objetivos de esta ley son garantizar: (1) la supervivencia de los dedicados al transporte y carga de agregados como medio de vida; (2) el derecho de la empresa privada a dedicarse a esta actividad; y (3) que la prestación de este servicio sea en forma satisfactoria y suficiente para cumplir con las necesidades comerciales e industriales de la Isla. *Id.* Sec. 2001.

Con tales objetivos en mente, el legislador confirió a la Comisión amplias facultades y deberes, mediante los cuales ésta ejerce su función reglamentadora. *Id.* Sec. 2005. Así, la Comisión tiene, entre otras, la facultad de conceder, expedir, denegar, suspender o revocar los permisos para el transporte y carga de agregados. La misma también está facultada a promulgar las reglas y reglamentos necesarios

para la implantación de la mencionada ley y para realizar investigaciones y audiencias públicas dirigidas a cumplir con los deberes conferidos. *Id.*

Al amparo de la Ley Núm. 1, *supra*, y de la Ley 109, *supra*, la Comisión promulgó el Reglamento Núm. 1817 de 20 de agosto de 1974 (en adelante *"el Reglamento"*). Este, mejor conocido como Reglamento de Carga de Agregados, define el transporte de agregados como *"todo servicio relacionado con el transporte de agregados, incluyendo su recibo, entrega, elevación, transbordo, desvío, conducción y manejo".* Reglamento, Art. 2.

La Comisión tiene, pues, la facultad de emitir autorizaciones para la carga y el transporte de agregados en todo Puerto Rico, Reglamento, Art. 4, y, también, el poder de" *revocar, modificar, enmendar o alterar cualquier autorización cuando a su juicio el interés público así lo requiera'.* Reglamento, Art. 38.

Por otro lado, el Art. 14 del Reglamento *"prohibe la discriminación contra los porteadores públicos cubiertos por este Reglamento, por razón de actividades concertadas para proteger su fuente de trabajo. **Los agregados se distribuirán entre las unidades necesarias para servir la fuente de producción, almacenaje o distribución del material a ser transportado.** Asimismo, los porteadores seleccionados no podrán negarse caprichosamente a prestar los servicios requeridos".* (subrayado nuestro). Como apreciamos, el Reglamento permite a los transportistas de carga de agregados organizarse con el propósito de defender sus intereses colectivos y los protege contra el discrimen relacionado con el ejercicio de este derecho. Además, específicamente exige que los agregados se distribuirán equitativamente entre las unidades para la transportación de los agregados.

Conforme a la normativa discutida, en especial el Art. 14 (c) de la Ley Núm. 109, *supra*, resolvemos que la Comisión tiene jurisdicción para entender en la querella sometida por el señor Raimundí. Productora, a pesar de no ser una concesionaria de la Comisión, opera una cantera que produce agregados. Sus actuaciones de no permitirle al señor Raimundí acceso a la cantera, impiden que una persona autorizada por la comisión para el transporte y carga de agregados pueda brindar este servicio público. Recordemos que la Comisión es el organismo gubernamental designado para determinar quién puede dedicarse al acarreo de agregados y para regular esta industria. Una vez Productora, quien tiene la opción de dedicar su propiedad al uso productivo que desee, decide operar un negocio que es parte integrante de una industria regulada por la Comisión, no podrá operar el mismo de manera que obstaculice el normal funcionamiento de dicha industria.

Si bien es cierto que los incidentes por los cuales se radicó la querella ocurrieron en la propiedad privada del recurrente, los mismos afectan el transporte y carga de agregados, materia sobre la cual la Comisión tiene amplias facultades de reglamentación, supervisión y vigilancia. Aceptar las alegaciones de la recurrente equivaldría a despojar a la Comisión de una gran parte de sus deberes y facultades.

### III
Otro de los argumentos de Productora es que la actuación de la Comisión constituye una privación de su derecho constitucional al goce y disfrute de la propiedad privada y, a su vez, un despojo de la misma sin una justa compensación. Veamos.

El Art. 1 de la Ley Núm. 1, *supra*, declara, en su totalidad, la actividad de transporte y carga de agregados por vías públicas para fines comerciales e industriales en Puerto Rico, como una actividad de interés público, a los fines de lograr y preservar el equilibrio deseable que debe existir entre la fuerza humana dedicada a tal actividad y la demanda o necesidad de los agregados para fines comerciales e *"industriales en Puerto Rico".* 27 L.P.R.A. sec. 2001. El legislador claramente dispuso el fin público perseguido al regular la carga y el transporte de agregados. Tal expresión legislativa no puede pasar por desapercibida al momento de aquilatar la controversia ante nuestra consideración porque define la naturaleza de la legislación como una de carácter socio-económico. Cabe señalar, además, que el poder de razón de Estado *("police power")* legitima el poder estatal para realizar actos en cumplimiento de su deber de velar por la salud, la seguridad y el bienestar general de la comunidad, mediante reglamentación razonable que limite el uso de la propiedad. *Arenas Procesadas, Inc. v. E.L.A.*, 132 D.P.R.___ (1993), **93 J.T.S. 13**, a la pág. 10355.

De otro lado, si bien es cierto, el carácter fundamental del derecho constitucional a la propiedad, también lo es que éste no es un derecho absoluto. Como ya ha expresado nuestro Tribunal Supremo, *"[h]oy podemos decir que la propiedad en las sociedades democráticas tradicionales entraña determinados derechos, pero que éstos viven en competencia continua con otros intereses, privados y públicos, de importancia cambiante y en ocasiones creciente. La extensión de esos derechos y el grado a que tienen que ceder ante otros valores dependen de las circunstancias de cada controversia "*. *Vázquez v. A.R.P.E.*, 128 D.P.R. ___ (1991), **91 J.T.S. 53**, a la pág. 8660; *The Richards Group v. Junta de Planificación*, 108 D.P.R. 23, 35 (1978). En este mismo sentido, el Tribunal Supremo de Puerto Rico ha establecido que: *"[E]n el mundo en que vivimos al propietario no sólo se le reconocen derechos, sino que, además, se le requiere el cumplimiento de ciertos deberes; es decir, el contenido de la propiedad, como afirman Wolff y Raiser, "puede ser configurado de tal suerte, en interés del público o en el de la economía en general, que al propietario les sean negadas determinadas formas de uso, **o se les impongan deberes de tolerancia**, o se les exija acciones positivas "*. (Citas omitidas) (Enfasis nuestro). *Vélez v. Srio. de Justicia,* 115 D.P.R. 533, 540 (1984).

Esto no quiere decir que el poder de razón de Estado, mediante el uso de la reglamentación de la propiedad privada, no tenga límites. Así lo consagra nuestra Constitución al disponer que a nadie se le tomará o se le perjudicará su propiedad privada para uso público a menos que medie una justa compensación. Art. II, Sec. 9, Constitución del Estado Libre Asociado de Puerto Rico, 1 L.P.R.A. (ed. 1982), a la pág. 296.

Para determinar cuándo el Estado actúa justificado por el poder de razón debemos evaluar, al menos, tres criterios; a saber: (1) la naturaleza de la actuación gubernamental; (2) el impacto económico de la reglamentación sobre las personas o entidades afectadas; y (3) si el impacto sobre el individuo es menor que el interés protegido por la reglamentación. *Arenas Procesadas, Inc. v. E.L.A., supra,* a la pág. 10356. Utilizando este análisis se ha resuelto que la reglamentación estatal que prive al dueño de la propiedad de todos sus usos productivos constituye una incautación compensable al amparo de la cláusula constitucional de expropiación forzosa. *Id.* De lo contrario, la reglamentación constituiría un uso constitucionalmente válido del poder de razón del Estado. *Id.*

A nuestro juicio, la resolución de la Comisión ordenándole a Productora que le permita al recurrido la entrada a la cantera no constituye una incautación de su propiedad. En nada, nos parece, se perjudica la propiedad privada de la recurrente. Más aún, el recurrente no ha perdido ningún valor productivo de su propiedad. A lo sumo, Productora está obligada a permitir el acceso del señor Raimundí a la cantera, pero, como ya explicamos, éste se dedica al transporte y carga de agregados, una actividad de alto interés público sobre la cual la Comisión tiene una función reglamentadora.

El poder de razón de Estado permite razonablemente limitar el uso y disfrute de la propiedad de Productora cuando, como ya dijimos, persigue proteger la salud, la seguridad y el bienestar general. No albergamos duda de que tanto la Ley 109, *supra,* como la Ley 1, *supra,* y el Reglamento, anteriormente discutidos, persiguen el bienestar común a través de una razonable reglamentación del transporte y carga de agregados, actividad de alto interés público por sus repercusiones en el desarrollo de la construcción, la infraestructura y, por ende, sobre la economía de Puerto Rico en general.

## IV

Productora nos señala que tiene derecho a seleccionar con quién hace negocios y a quién le permite acceso a su propiedad con tales propósitos. En apoyo a su argumento nos cita dos decisiones del Tribunal Supremo de los Estados Unidos, *U.S. v. Colgate,* 250 U.S. 300 (1919), y *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1985), y la decisión de nuestro más alto foro en *Ex-parte Irizarry,* 66 D.P.R. 672 (1946). Sin embargo, tales opiniones son contrarias a la posición de la recurrente.

Los tres casos citados por Productora se resolvieron en el contexto de la legislación federal antimonopolios, mejor conocida como el Sherman Act, 15 U.S.C.A. sec. 2. En el más reciente de los casos federales, *Aspen Skiing Co., supra,* el demandante alegaba, en esencia, que el demandado monopolizó los servicios locales para la práctica del deporte de *"ski",* en violación a la citada ley antimonopolios, al negarse a continuar una larga relación de mercadeo conjunto de las facilidades

locales, lo cual prácticamente lo excluia del negocio y dejaba como único proveedor al demandado. Por su parte, el demandado alegó que tenía derecho a decidir con quién hace negocios; por lo tanto, no tenía la obligación de continuar la relación de negocios con el demandado. El Tribunal Supremo federal, por voz del juez Stevens, concluyó que si bien es cierto que no existe un deber de hacer negocios con empresas específicas o, en otras palabras, los hombres de negocio tienen el derecho de escoger sus clientes y asociados, no quiere esto decir que tales prerrogativas o derechos sean absolutos. *Id.*, pág. 601. Muestra de lo anterior es la determinación final de este caso, la cual, a pesar de tal derecho, concluyó que la decisión del demandado de no continuar las relaciones de negocio con el demandante violaba la Sec. 2 del Sherman Act. Citando con autoridad lo resuelto en *Lorain Journal Co. v. United States*, 342 U.S. 143 (1951), el tribunal resolvió que el derecho invocado por el demandado no es absoluto ni exento de regulación estatal. *Id.*, pág. 602. El tribunal continúa diciendo que aun cuando la decisión de no hacer negocios no significa, necesariamente, una violación del estatuto federal antimonopolios, cuando tal determinación tiene la intención de monopolizar, sin prueba alguna de que la misma es una válida razón de negocio, entonces se viola la Sec. 2 del Sherman Act. *Id.*

Aunque en un contexto diferente, tal razonamiento aplica a la situación fáctica de autos. Ausente una válida razón de negocios, Productora no puede impedir la entrada a una persona autorizada a prestar el servicio público de carga y transporte de agregados. Aclaramos que Productora alega que las actuaciones delictivas del señor Raimundí son una válida razón de negocios para negarle la entrada a su cantera. No obstante, tal alegación no fue adecuadamente sustentada por la prueba presentada por la recurrente ante la Comisión.

Debemos añadir que el análisis expuesto en la Parte III A de esta opinión, aplica, también, al señalamiento de error que ahora discutimos. El poder de razón de Estado puede limitar derechos derivados del derecho constitucional a la propiedad privada cuando la regulación es razonable y persigue proteger la salud, la seguridad o el bienestar comunal.

## V

Para discutir el último error indicado, partimos de la norma que concede una presunción de legalidad y corrección a las decisiones de los organismos administrativos. *A.R.P.E. v. Junta de Apelaciones sobre Construcciones y Lotificaciones,* 124 D.P.R. 858, 864 (1989); *Murphy Bernabé v. Tribunal Superior,* 103 D.P.R. 692, 699 (1975).

La recurrente aduce que la Comisión no basó su decisión en el informe de las oficiales examinadoras, en tanto y en cuanto no se menciona específicamente en la resolución recurrida. Añaden que el informe del oficial examinador que preside una vista lo exige la Sec. 3.13 de la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. sec. 2101. Sin embargo, la resolución en cuestión indica que la Comisión consideró el expediente administrativo en su totalidad, lo cual incluyó la evidencia admitida en los procedimientos y los documentos oficiales obrantes en el expediente. No se nos señala que tal informe no se haya preparado. El mero hecho de que no hay una referencia específica en la resolución sobre el informe de la vista no significa que no ha sido considerado por la Comisión. Además, debemos presumir que la Comisión actuó de acuerdo con la ley y correctamente, según la norma expuesta en el párrafo que precede. La recurrente no nos ha colocado en la posición de descartar esta presunción.

Por último, como bien señala Productora, cuando quien preside la vista no toma la decisión final, lo importante es que quien la tome lo haga de manera informada y con conocimiento y comprensión de la evidencia ofrecida. *A.D.C.V.P. v. Tribunal Superior,* 101 D.P.R. 875, 883 (1974). Un examen de la resolución recurrida nos convence que la Comisión emitió una decisión informada y con conocimiento y comprensión de la evidencia desfilada ante las oficiales examinadoras.

## VI

A la luz de todo lo anterior, se deniega la expedición del auto de revisión solicitado.

Lo acordó el Tribunal y lo certifica la Secretaria General.

**ESCOLIOS 97 DTA 171**

**1.** No pasaremos juicio sobre la procedencia de la suma otorgada en daños y perjuicios, pues ello no fue materia de señalamiento por la recurrente.

**2.** Productora recurrió de esta determinación ante el Tribunal de Circuito de Apelaciones. Este, mediante Resolución de 26 de febrero de 1997, denegó el auto solicitado por estimar que "*la etapa del procedimiento administrativo en que se encuentra este caso, no es la más apropiada para entender y resolver lo que nos solicita la recurrente en su escrito de revisión. En adición, no es la más adecuada para el análisis del problema planteado. La Comisión de Servicio Público de Puerto Rico debe tener la oportunidad de considerar las alegaciones de las partes y recibir prueba, de ser necesario, a los fines de resolver la moción de desestimación por falta de jurisdicción presentada por la recurrente*".