ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| WILFREDO VALENTÍN SERRANO<br><br>Recurrente<br><br>v.<br><br>RICARDO VARGAS H/N/C RICHIE EBANISTERÍA<br><br>Recurridos | KLRA202500186 | REVISIÓN ADMINISTRATIVA Procedente del Departamento de Asuntos del Consumidor<br><br>Caso núm.: SAN-2023-0014119<br><br>Sobre: Contrato de obras y servicios |

Panel integrado por su presidenta, la Jueza Ortiz Flores, la Jueza Aldebol Mora y la Jueza Boria Vizcarrondo

**Ortiz Flores, Jueza Ponente**

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de junio de 2025.

Comparece ante este foro revisor el señor Wilfredo Valentín Serrano (Sr. Valentín Serrano; recurrente) y nos solicita que revoquemos la *Resolución* emitida por el Departamento de Asuntos del Consumidor (DACo) el 28 de febrero de 2025 y notificada el 4 de marzo de 2025. En la determinación administrativa, el DACo ordenó el pago de $500.00 a favor del recurrente.

Adelantamos que, por los fundamentos que expondremos a continuación, revocamos la resolución recurrida.

**I**

El 21 de abril de 2023, el Sr. Valentín Serrano presentó ante el DACo una *Querella* contra el señor Ricardo Vargas h/n/c Richie Ebanistería (Sr. Vargas; recurrido) donde detalló que el 20 de marzo de 2022 había contratado a Richie Ebanistería para la construcción de unos gabinetes de cocina.[1] De igual manera alegó que el trabajo

---
[1] Anejo B del recurso.

realizado estaba incompleto según lo estipulado en el contrato entre las partes y que lo entregado estaba defectuoso, mal terminado, mal pintado y construido con materiales diferentes a los cotizados. Por tal motivo, solicitó como remedio una devolución de dinero por un total de $4,800.00 en adición a la entrega de unos materiales. El 13 de junio de 2023, DACo notificó fecha de citación de inspección pautada para el 17 de julio de 2023 en la residencia del recurrente, donde se realizaron los trabajos de construcción.[2] Posteriormente, el 6 de septiembre de 2023, DACo notificó su *Informe de Inspección de Construcción* donde el técnico de investigación documentó los siguientes hallazgos:

> De la visita de inspección realizada se desprende de un contrato fabricar, [e]nsamblar, instalar gabinete de cocina que se pudo corroborar un visible deterioro en [p]uertas, tobillero, gavetas, gozne, pintura, laminado en medidas customi[z]ado en espacios que no fueron lo[s] más fieles y exacto[s] en relativamente todo el mueble y alacena para cocina interior.[3]

Como resultado de lo anterior, emitió la siguiente opinión pericial:

> Muchas deficiencias en un gabinete que se construyó de manera defectuosa, las secciones, en relativamente todo el gabinete de cocina, por tal y como fue diseñado, construido y entregado se imposibilita el uso y disfrute diario por lo que no cumple con el propósito para el que fue contratado, aceptando el 100% del pago por la fabricación, ensamblaje, instalación y terminaciones que no cumple[n] según acuerdo del diseño y contrato. Se recomienda la remoción y disposición del mueble en su totalidad.
>
> Sin embargo, se provee de un estimado en caso de querellado no cumpla con su [r]esponsabilidad [o] el re[e]mbolso de la cantidad envuelta para reparar aquellos trabajos realizados por el querellado de forma incorrecta. Estimado, facturas, [p]ago, recibo a presentar de ser requerido.[4]

También realizó un estimado por la cantidad total de $7,511.40 por concepto de pago por servicios no prestados y

---

[2] Anejo F del recurso.
[3] Anejo G del recurso.
[4] *Id.*

reparaciones de obras realizadas incorrectamente además de la mano de obra.

Así las cosas, DACo celebró una vista administrativa donde comparecieron el Sr. Valentín Serrano por derecho propio y su hijo el señor Wilfredo Valentín Pérez (Sr. Valentín Pérez). También compareció el Sr. Vargas. Luego de la celebración de la mencionada vista administrativa el DACo emitió una *Resolución* donde realizó las siguientes determinaciones de hechos:

1. La parte querellante se identifica como Wilfredo Valentín Serrano y Wilfredo Valentín Pérez, mayores de edad y con parentesco de padre e hijo. La dirección postal de récord de la parte querellante es la siguiente: PO Box 10418, San Juan, Puerto Rico 00922.

2. La parte querellante se identifica como Ricardo Vargas Vargas, haciendo negocios como Richie Ebanistería, residente del municipio de Bayamón, Puerto Rico. Su dirección postal de récord es la siguiente: HC 69 Box 15712, Bayamón, Puerto Rico 00956-0020.

3. Durante la vista administrativa celebrada se admitieron en evidencia y se marcaron como *Exhibits* los siguientes documentos:

   a. Copia de Hojas de cheques. *Exhibit* #1.
   b. Plano. *Exhibit* #2.
   c. Estimado. *Exhibit* #3.

4. En o alrededor del mes de marzo de 2022, las partes acordaron un contrato de obras para la fabricación e instalación de unos muebles gabinetes, a ser fabricados e instalados por la parte querellada, en una residencia propiedad de la parte querellante.

5. La cuantía acordada por la obra fue de $8,000.00, de los cuales la parte querellante pagó la cantidad de $7,225.00 a la parte querellada.

6. Luego de acordar los términos de la obra, la parte querellada visitó la residencia de la parte querellante para inspeccionar el área y rectificar medidas.

7. Durante el proceso de fabricación de los gabinetes, la parte querellante se personó al taller de la parte querellada en dos (2) ocasiones para inspeccionar la obra y verificar el estatus de la misma. La parte querellante no reclamó en ese momento algún desperfecto en la obra.

8. Los gabinetes fueron construidos conforme las medidas y diseños acordados entre las partes, pero la parte querellada fue negligente en el tiempo de entrega de la obra para con la parte querellante.

9. El tiempo que la parte querellada se tardó en completar y entregar la obra fue irrazonable.

10. Las causas de la tardanza en el tiempo de entrega de la obra son atribuibles a la parte querellada.

11. El incumplimiento con el tiempo de entrega de la parte querellada constituye negligencia, la cual es la causa próxima de los daños de la parte querellante.

12. El incumplimiento de la parte querellada con el tiempo de entrega al prestar el servicio y completar la obra, privó a la parte querellante por un tiempo determinado del uso y disfrute de la cocina y gabinetes.

13. La propiedad en donde se realizó la obra es la residencia principal de la parte coquerellante, Wilfredo Valentín Pérez.[5]

En la mencionada *Resolución* la agencia también concluyó que el recurrido incumplió con el término de entrega de la obra y la culminación de esta. Sin embargo, dispuso lo siguiente:

> [N]os parece que estos incumplimientos no dan pie a la resolución del contrato o que implique la devolución de las contraprestaciones. La parte querellante no pudo demostrar que la parte querellada incurrió en maquinaciones insidiosas o actuaciones dolosas al contratar. Tampoco surge del expediente y la prueba admitida que la parte querellada actuó de mala fe en el cumplimiento de sus obligaciones más importantes. De igual modo, surgió de los testimonios vertidos que la parte querellante tenía un balance pendiente de pago por la cantidad de $750.00. Esto, debe restársele a cualquier compensación otorgada por la parte querellante.[6]

Por todo lo anterior, DACo ordenó al Sr. Vargas a realizar un pago a favor del Sr. Valentín Serrano y/o por la cantidad de $500.00 dentro de un término no mayor de cuarenta y cinco (45) días y en caso de no cumplir acumularía el interés legal fijado para las sentencias judiciales computado desde la fecha de notificación del dictamen hasta que el pago sea satisfecho.[7]

---

[5] Apéndice del *Alegato*, págs. 37-38.
[6] Apéndice del *Alegato*, pág. 40.
[7] Apéndice del *Alegato*, pág. 41.

Inconforme con la decisión del DACo, el Sr. Valentín Serrano recurrió ante nosotros mediante el recurso de epígrafe y se limitó a ripostar las determinaciones de hechos realizadas por la agencia en su dictamen. Particularmente atendió las determinaciones número 3, 5, 7 y 8 para las cuales adujo que estas no se sustentaban con el expediente y la prueba presentada. También arguyó que la obra además de haber sido entregada tardíamente esta no fue completada y lo realizado fue de manera defectuosa. Además, indicó que no solo se celebró una vista administrativa, sino que fueron tres. El recurrido presentó su alegato oportunamente el 16 de mayo de 2025, el cual perfeccionó el recurso. Por tal motivo, nos hallamos en posición de resolver.

**II**

**A**

En nuestro ordenamiento jurídico, la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017 3 LPRA sec. 9601, *et seq.* (LPAU) es el estatuto aplicable a todos los procedimientos administrativos conducidos ante todas las agencias que no estén expresamente exceptuados por dicha ley. Véase sec. 1.4 de la LPAU, 3 LPRA. sec.9604. En lo pertinente, la sección 4.2 de la LPAU, 3 LPRA sec. 9672, dispone lo siguiente:

> Una parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar una solicitud de revisión ante el Tribunal de Apelaciones, dentro de un término de treinta (30) días contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia o a partir de la fecha aplicable de las dispuestas en la sección 9655 de esta Ley, cuando el término para solicitar la revisión judicial haya sido interrumpido mediante la presentación oportuna de una moción de reconsideración.

Asimismo, la sección 4.5 de la LPAU, 3 LPRA sec. 9675, dispone en cuanto al alcance la revisión judicial, lo siguiente:

El tribunal podrá conceder el remedio apropiado si determina que el recurrente tiene derecho a un remedio. Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo.

Las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal.

Se ha resuelto que los dos requisitos para que las órdenes emitidas por las agencias administrativas puedan ser revisadas por este Tribunal son los siguientes: que la resolución sea final y no interlocutoria, y que la parte adversamente afectada por la orden haya agotado los remedios provistos por la agencia. *Depto. Educ. v. Sindicato Puertorriqueño,* 168 DPR 527, 543 (2006) que cita a *Procuradora Paciente v. MCS,* 163 DPR 21, 34-35 (2004); *J. Exam. Tec. Méd. v. Elías et al., supra,* a la pág. 491.

La revisión judicial de las decisiones administrativas fue un procedimiento que se ideó como parte de un trámite apelativo dirigido a alcanzar el principio constitucional de mayor acceso a los tribunales. J. Echevarría Vargas, *Derecho Administrativo Puertorriqueño,* Ediciones SITUM, Inc., 2012, pág. 281. Así, "a través de la revisión judicial se controla la acción o inacción, de las agencias administrativas". *Id.* El propósito de la revisión judicial de las decisiones administrativas es que las agencias demuestren su razonamiento y los hechos en lo que basa sus decisiones y que demuestren que las mismas están dentro del ámbito del poder y la autoridad delegada en ellas. *Id.,* págs. 281-282. En este esquema, nos corresponde como tribunal fiscalizar con rigurosidad las decisiones administrativas para asegurarnos que las agencias cumplan con sus funciones y que no se pierda la fe en las instituciones de gobierno. *Id.,* pág. 282.

La revisión judicial de decisiones administrativas abarca esencialmente tres áreas: (1) la concesión del remedio apropiado, (2) la revisión de las determinaciones de hechos de acuerdo con el

criterio de evidencia sustancial, y (3) la revisión de las conclusiones de derecho. D. Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, 3ra ed., Colombia, FORUM, 2013, pág. 688. Ahora bien, es importante señalar que la revisión por parte de los tribunales en cuanto a las determinaciones de las agencias es limitada. La norma reiterada por nuestro Tribunal Supremo es que las decisiones de las agencias administrativas merecen deferencia judicial por la "vasta experiencia y conocimiento especializado sobre los asuntos que por ley se les ha delegado". *JP, Plaza Santa Isabel v. Cordero Badillo*, 177 DPR 177,186 (2009). Los tribunales debemos respetarlas "a menos que **la parte recurrente establezca que hay evidencia en el expediente administrativo suficiente para demostrar que la agencia no actuó razonablemente**". (Énfasis nuestro.) *Borschow Hosp. v. Jta. de Planificación*, 177 DPR 545, 566 (2009). Por ello, se ha planteado que "los tribunales no deben intervenir o alterar las determinaciones de hechos de un organismo administrativo si las mismas están sostenidas por evidencia sustancial que surja del expediente administrativo considerado en su totalidad". *Otero v. Toyota*, 163 DPR 716, 727-728 (2005). Así pues, en nuestra función como tribunal revisor debemos limitar nuestra intervención a determinar si la actuación de la agencia fue una caprichosa, arbitraria, ilegal o que constituye un abuso de discreción por ser irrazonable. *Murphy Bernabé v. Tribunal Superior*, 103 DPR 692, 699 (1975). Lo anterior responde a que "los procedimientos ante un organismo administrativo tienen a su favor una presunción de regularidad y corrección". *A.D.C.V.P v. Tribunal Superior*, 101 DPR 875, 889 (1974). No obstante, ello no constituye un ejercicio automático.

Por otro lado, en cuanto a la revisión de conclusiones de derecho, la norma es que son revisables en todos sus aspectos por

este Tribunal. *Olmo Nolasco v. Del Valle Torruella*, 175 DPR 464, 470 (2009).

Sin embargo, en *Vázquez v. Consejo de Titulares*, 2025 TSPR 56 (2025), el Tribunal Supremo de Puerto Rico revisitó la deferencia que, según la LPAU, *supra*, los foros judiciales le deben otorgar a las conclusiones de derecho provistas por las agencias administrativas. Lo anterior, a la luz del marco jurídico provisto por el Artículo 4.5 de la LPAU, *supra*, sec. 9675, y lo resuelto por el Tribunal Supremo de los Estados Unidos en *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024).

En reiteradas ocasiones, nuestro máximo foro había sostenido que las conclusiones e interpretaciones de las agencias merecían gran consideración, y que la revisión judicial se limitaba a determinar si estas habían actuado arbitraria o ilegalmente. *Vázquez v. Consejo de Titulares*, *supra*. A pesar de lo anterior, advirtió que esta consideración no equivalía a una renuncia de nuestra función revisora, sino que la interpretación de la ley "es una tarea que corresponde inherentemente a los tribunales". *Vázquez v. Consejo de Titulares*, *supra*. Además, expuso que, aunque el Artículo 4.5 de la LPAU, *supra*, sec. 9675, dispone que las conclusiones de derecho "serán revisables en todos sus aspectos por el tribunal", será deber de los tribunales revisar las conclusiones de derecho de las agencias en todos sus aspectos, guiados por los mecanismos interpretativos propios del Poder Judicial y no por la deferencia automática a las agencias.

**B**

En el arrendamiento de obras o servicios, una de las partes se obliga a ejecutar una obra, o a prestar a la otra un servicio por precio cierto. Artículo 1434 del Código Civil de Puerto Rico (Código). Véase también, *Master Concrete Corp. v. Fraya, SE.*, 152 D.P.R. 616, 623 (2000) ("[m]ediante el contrato de arrendamiento de obras, una parte

se obliga hacia la otra a ejecutar una obra a cambio de la contraprestación convenida"). El contrato de arrendamiento de obras es uno "esencialmente uno de trabajo, mediante el cual una de las partes se encarga de hacer una cosa para la otra, mediante un precio convenido entre ellos". *Constructora Bauzá, Inc. v. García*, 129 DPR 579, 592 (1991). El contrato de obra es uno de carácter consensual, bilateral, y oneroso cuyos elementos característicos son la obra por realizarse y el precio. *Id.* En un contrato de obra, el dueño de la obra tiene la obligación fundamental de pagar el precio de ésta en la forma, en la cuantía y en el tiempo convenido, mientras que el contratista, por su parte, tiene la obligación de realizar y entregar la obra según lo pactado. *Master Concrete Corp. v. Fraya, SE.*, *supra.*

Las dos modalidades más frecuentes para determinar el precio cierto en un contrato de obras es (1) el precio por ajuste o precio alzados y (2) el precio por unidad o medida. Albaladejo M., *Comentarios al Código Civil y Compilaciones Forales, Editorial Revista de Derecho Privado*, Madrid, 1986, t. XX, voL2, pág. 218. En cuanto al contrato de obra de precio alzado, el Tribunal Supremo de Puerto Rico discutió en detalle el contrato de obra a precio alzado, como sigue:

> [E]l contrato de obra a precio alzado consiste en señalar un monto por la totalidad de la ejecución de la obra, asumiendo el contratista los riesgos de la operación. El empresario se obliga a hacer entrega de la obra, realizada de conformidad con un proyecto técnico previamente acordado por los contratantes, por un precio global también fijado previamente. El contrato de obra por ajuste alzado se caracteriza por la concurrencia de tres elementos: invariabilidad del precio, plano detallado y riesgo asumido por el contratista.
>
> Sobre este tipo de contrato, señala el Artículo 1485 del Código Civil, lo siguiente:
>
>> El arquitecto o contratista que se encarga por un ajuste alzado de la construcción de un edificio u otra obra en vista de un plano convenido con el propietario del suelo no puede pedir aumento de precio, *aunque se*

*haya aumentado el de los jornales o materiales,* pero podrá hacerlo cuando se haya hecho algún cambio en el plano que produzca aumento de, obra, siempre que hubiese dado su autorización el propietario. (Énfasis en original.)

Este precepto se suele justificar en que el riesgo de aumento de costos es consustancial a la función empresarial del contratista, que puede prevenir y evitar ese perjuicio mediante la estipulación contractual que admita la modificación de los costos unitarios en la ejecución (materiales, mano de obra, etc.) de forma que no influyan en el beneficio previsto, o mediante el pacto de las oportunas cláusulas de estabilización. M. Albaladejo, *Comentarios al Código Civil y Compilaciones Forales*, Madrid, Ed. Revista de Derecho Privado, 1986, T. XX, Vol. 2, págs. 382-383.

Vemos pues, que[,] en este tipo de contrato, para todo lo que presumiblemente estaba contemplado y previsto y debía preverse al momento de contratar, el precio es definitivo y no puede ser aumentado en interés del empresario, aunque éste pruebe que se perjudicó.

En consecuencia, reafirmamos los pronunciamientos hechos en *Méndez v. Jiménez, Comisionado de lo Interior, etc.*, 72 D.P.R 335, a la pág. 340, (1951), mediante el cual, ante una reclamación hecha por el contratista a raíz del aumento en el salario mínimo, en un contrato a precio alzado, señalamos:

> ...[S]iendo ese un riesgo a que está expuesto todo contratante, bien pudo el demandante al celebrar su contrato con El Pueblo de Puerto Rico, tomar las precauciones pertinentes para protegerse contra esa contingencia, pactando que cualquier aumento en los jornales que con motivo de una disposición legal se viere obligado a satisfacer, dicho aumento le fuese resarcido por El Pueblo de Puerto Rico. El demandante, pues, no tiene causa de acción contra el demandado.

Resolver en contrario a lo antes expuesto desvirtuaría la naturaleza del contrato de obras a precio alzado y le concedería al contratista la facultad de renegociar los términos del contrato por un acontecimiento que pudo, haber siclo previsto oportunamente, al momento de contratar. *Crufon Construction v. Autoridad de Edificios Públicos*, 156 D.P.R. 197, 209-211 (2002).

La obra por ajuste o precio alzado promueve la fijación y estabilidad del precio aun en casos donde aumenta la mano de obra o los materiales. **Los aumentos o disminuciones en los costos para cumplir con el referido contrato es el riesgo que asume el**

**contratista** —para su beneficio o perjuicio— por contratar una obra a precio alzado. Sobre ese particular, el tratadista Vélez Torres sostiene lo siguiente:

> A base del principio de obligatoriedad que rige nuestro Derecho encarnado en la frase *pacta sunt servanda*, tan pronto como el contratista y el dueño convienen en la ejecución de una obra por un precio, páguese este al final de la ejecución o por partes, según que la obra vaya progresando, ya el contratista no puede cambiar unilateralmente la cantidad convenida como precio. Esto así, aun cuando aumenten los salarios de los empleados o el precio de los materiales. La única situación que justificaría al contratista modificar el precio sería el caso de que luego de otorgado el contrato conforme a un plano el dueño pidiera modificaciones al plano y estas modificaciones tuvieran el efecto de aumentar los trabajos a realizarse. Vélez Torres, J.R., *Curso de Derecho Civil*, T. IV, Vol. II, lera ed., 1990, UIPR, pág. 369. (Énfasis nuestro.)

**III**

El recurrente no presentó señalamientos de errores en el recurso de epígrafe; en su lugar presentó argumentos sobre las determinaciones de hechos realizadas por la agencia el dictamen administrativo recurrido, sobre las cuales señaló que estas no se sustentaban con el expediente y la prueba presentada. También reclamó que la obra además de haber sido entregada tardíamente esta no fue completada y lo realizado fue de manera defectuosa.

Luego de examinar detenidamente la resolución recurrida, el informe del perito de DACo incluido como anejo del recurso, y conforme al derecho aplicable antes reseñado, resolvemos que se justifica revocar la resolución recurrida.[8] En su consecuencia, ordenamos el pago de $6,000 por concepto de compensación por los servicios pagados y ante el incumplimiento de la obra pactada[9]; se

---

[8] Conforme a lo dispuesto en la Regla 15 del Reglamento de Procedimientos Adjudicativos, Reglamento Núm. 8034, 14 de junio de 2011, págs. 15-16, si no se presentan objeciones al informe, dentro de un término de quince (15) días, "se considerará estipulado por las partes relevando la presencia del investigador en la vista administrativa". Surge del Anejo G del recurso, que se notificó el Informe de Inspección a las partes por correo el 6 de septiembre de 2023, se les concedió 15 días para presentar sus objeciones por escrito, si alguna, al informe, y no se presentó alguna.

[9] Anejo G del recurso, pág. 3 del Informe de Inspección de Construcción.

trata de "[m]uchas deficiencias en un gabinete que se construyó e instal[ó] de manera defectuosa, las secciones, en relativamente todo el gabinete de cocina, por tal y c[o]mo fue diseñado, construido y entregado se imposibilita el uso y disfrute diario por lo que no cumplir con el propósito para el que fue contratado, aceptando el 100% del pago de a fabricación, ensamblaje, instalación y terminaciones y terminaciones que no cumple[n] según acuerdo del diseño y contrato." [10]

**IV**

Por lo antes expuesto, se revoca la resolución recurrida, y se dispone lo siguiente:

> Se ordena a la parte recurrida, Ricardo Vargas Vargas a, dentro de un término no mayor a cuarenta y cinco (45) días, **realizar un pago de $6,000.00 en favor de la parte recurrente Wilfredo Valentín Serrano y/o Wilfredo Valentín Pérez**, y de no cumplir con el pago antes requerido dentro del término provisto, la cantidad adeudada pasará a acumular el interés legal vigente acumulado sobre dicha cantidad, al tipo que fija la ley para sentencias judiciales, computado desde la fecha de notificación de esta Sentencia y hasta que sea satisfecho.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

La Jueza Aldebol Mora disiente sin escrito.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[10] *Id.*, pág. 2.