Estado Libre Asociado de Puerto Rico
Tribunal de Apelaciones
Panel IV

| | | |
|---|---|---|
| GLADYS FEBUS MARCANO<br>Parte Recurrente<br><br>V.<br><br>CORPORACIÓN DEL FONDO DEL SEGURO DEL ESTADO<br>Parte Recurrida | TA2025RA00209 | *Revisión administrativa* procedente de la Comisión Apelativa del Servicio Público, San Juan, Puerto Rico<br><br>2025CA0653<br>Caso Núm.<br>2017-06-1343<br><br>Sobre:<br>Clasificación de Puestos |

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Bonilla Ortiz y la Jueza Martínez Cordero

Ortiz Flores, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 27 de octubre de 2025.

Comparece la señora Gladys Febus Marcano (Sra. Febus Marcano; recurrente) ante este Tribunal de Apelaciones mediante el recurso de epígrafe y nos solicita que revoquemos la *Resolución* emitida el 30 de junio de 2025, y notificada en esta misma fecha, por la Comisión Apelativa del Servicio Público (CASP) y ordenemos a la Corporación del Fondo de Seguro del Estado (CFSE; recurrida) a reclasificar el puesto ocupado por la recurrente.

Por los fundamentos que expondremos a continuación, decidimos confirmar la resolución recurrida.

**I**

La Sra. Febus Marcano ocupa el puesto de Secretaria Ejecutiva I en la Oficina del Subdirector Regional, Dispensario de Manatí, de la Región de Arecibo de la CFSE y el 6 de octubre de 2016 solicitó reclasificación de su puesto a Secretaria Ejecutiva II. El 10 de mayo de 2017, la recurrente recibió respuesta al respecto donde el CFSE notificó que su petición no

podía ser atendida en aquel momento según lo establecido en la *Ley Especial de Sostenibilidad Fiscal y Operacional del Gobierno del Estado Libre Asociado de Puerto Rico* (Ley 66-2014), la *Ley para Atender la Crisis Económica, Fiscal y Presupuestaria para Garantizar el Funcionamiento del Gobierno de Puerto Rico* (Ley 3 de 23 de enero de 2017) y la Carta Circular 144-17 de la Oficina de Gerencia y Presupuesto.[1] Inconforme con lo anterior, la recurrente acudió a la CASP mediante recurso de apelación y planteó que las disposiciones de la citada ley no eran aplicables a su caso. Arguyó que esto último era así ya que la Sra. Febus Marcano no había solicitado un aumento de sueldo según definido en el estatuto ni un traslado, sino que había solicitado una reclasificación. Adujo que una reclasificación no estaba contemplada entre las prohibiciones que incluye el Artículo 11(b) de la Ley 66-2014 ni era considerada como un aumento. A esto añadió que la reclasificación de puesto solicitada por la recurrente tenía el efecto de eliminar la necesidad de reclutar empleados adicionales por lo que se trataba de una transacción de personal que estaba permitida por la Ley.

Recibida la apelación ante la CASP, y luego de algunos trámites procesales, se celebró vista en su fondo el 7 de octubre de 2022 mediante conferencia telefónica. En dicha vista, las partes concertaron que la controversia del caso giraba en torno a asuntos de estricto derecho, de los cuales se podía disponer a través de memorandos. Por tal motivo, la Oficial Examinadora autorizó la preparación de memorandos a las partes. Luego de cumplido con lo anterior, la Oficial Examinadora preparó un Informe donde realizó las siguientes determinaciones de hechos a base de la prueba documental estipulada por las partes:

1. La parte promovente ocupa el puesto de Secretaria Ejecutiva I, Oficina del Subdirector Regional, Dispensario de Manatí, Región de Arecibo de la Corporación del Fondo del Seguro del Estado.

2. El 6 de octubre de 2016 la parte promovente de epígrafe presentó una solicitud de reclasificación, por norma, de su

---

[1] Apéndice del recurso, Anejo V, pág. 38.

puesto como Secretaria Ejecutiva [I] a Secretaria Ejecutiva II.

3. Mediante comunicación del 10 de mayo 2017, la Directora Asociada de Recursos Humanos de la CFSE, Angie E. Hernández, le notificó a la parte promovente que:

> "La Ley 66-2014 y, actualmente, la Ley 3, de 23 enero de 2017, Ley para Atender la Crisis Económica, Fiscal y Presupuestaria para Garantizar el Funcionamiento del Gobierno de Puerto Rico; y la Carta Circular 144-17, de 10 de marzo de 2017, de la Oficina de Gerencia y Presupuesto, que es la entidad facultada en ley para llevar a cabo las encomiendas asignadas por la referida Ley 3, supra, dispone que no podía concederse aumentos en beneficios económicos ni compensación monetaria extraordinaria a los empleados de las entidades de la Rama Ejecutiva. Dicha Carta Circular define que se considerará aumento económico [...] "aumentos de sueldo por años de servicio, servicio meritorio, retribución adicional por habilidades o competencia, y aumentos generales; [...] aumentos por ascensos o traslados". En atención a lo anterior, le indicamos que dicha petición no puede ser procesadas en estos momentos."

4. La parte promovente ejerció su derecho de apelación ante la CASP de la determinación recibida el 31 de mayo de 2017.[2]

Asimismo, en sus conclusiones de derecho estableció que al amparo de la Ley 66-2014 y la Ley 3-2017, particularmente por lo establecido en el Artículo 11(a) y el Artículo 7 respectivamente, la CFSE estaba impedida de conceder la solicitud promovida por la Sra. Febus Marcano. Por tal motivo, declaró No Ha Lugar la apelación presentada y fundamentó su decisión en que la solicitud de la recurrente conllevaba un aumento de salario que estaba claramente prohibido por las leyes antes citadas.

Inconforme con lo resuelto, el 21 de julio de 2025 la recurrente sometió una *Moción de Reconsideración*.[3] Esta cual fue declarada No Ha Lugar por la CASP el 1 de agosto de 2025 y fue notificada en esta misma fecha.[4] Aún inconforme, la Sra. Febus Marcano acude ante este foro apelativo y en su recurso expone el siguiente único señalamiento de error:

---

[2] Apéndice del recurso, Anejo II, pág. 11.
[3] Apéndice del recurso, Anejo IV, págs. 28-31.
[4] Apéndice del recurso, Anejo I, págs. 1-4.

ERR[Ó] EL HONORABLE FORO ADMINISTRATIVO AL DECLARAR NO HA LUGAR LA APELACI[Ó]N A BASE DE LA LEY 66-2014, LEY 3-2017 Y CARTA CIRCULAR 144-17 LA SOLICITUD DE RECLASIFICACI[Ó]N DE LA APELANTE, GLADYS FEBUS MARCANO, AL PUESTO DE SECRE[T]ARIA EJECUTIVA I AL PUESTO DE SECRETARIA EJECUTIVA II

La parte recurrida compareció oportunamente el 1 de octubre de 2025 mediante oposición. Al contar con el beneficio de la comparecencia de ambas partes, resolvemos.

**II**

**A**

En nuestro ordenamiento jurídico, la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017 3 LPRA sec. 9601, *et seq.* (LPAU) es el estatuto aplicable a todos los procedimientos administrativos conducidos ante todas las agencias que no estén expresamente exceptuados por dicha ley. Véase sec. 1.4 de la LPAU, 3 LPRA. sec.9604. En lo pertinente, la sección 4.2 de la LPAU, 3 LPRA sec. 9672, dispone lo siguiente:

> Una parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar una solicitud de revisión ante el Tribunal de Apelaciones, dentro de un término de treinta (30) días contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia o a partir de la fecha aplicable de las dispuestas en la sección 9655 de esta Ley, cuando el término para solicitar la revisión judicial haya sido interrumpido mediante la presentación oportuna de una moción de reconsideración.

> Asimismo, la sección 4.5 de la LPAU, 3 LPRA sec. 9675, dispone en cuanto al alcance la revisión judicial, lo siguiente:

> El tribunal podrá conceder el remedio apropiado si determina que el recurrente tiene derecho a un remedio. Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo.

> Las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal.

Se ha resuelto que los dos requisitos para que las órdenes emitidas por las agencias administrativas puedan ser revisadas por este Tribunal

son los siguientes: que la resolución sea final y no interlocutoria, y que la parte adversamente afectada por la orden haya agotado los remedios provistos por la agencia. *Depto. Educ. v. Sindicato Puertorriqueño,* 168 DPR 527, 543 (2006) que cita a *Procuradora Paciente v. MCS,* 163 DPR 21, 34-35 (2004); *J. Exam. Tec. Méd. v. Elías et al., supra*, a la pág. 491.

La revisión judicial de las decisiones administrativas fue un procedimiento que se ideó como parte de un trámite apelativo dirigido a alcanzar el principio constitucional de mayor acceso a los tribunales. J. Echevarría Vargas, *Derecho Administrativo Puertorriqueño*, Ediciones SITUM, Inc., 2012, pág. 281. Así, "a través de la revisión judicial se controla la acción o inacción, de las agencias administrativas". *Id.* El propósito de la revisión judicial de las decisiones administrativas es que las agencias demuestren su razonamiento y los hechos en lo que basa sus decisiones y que demuestren que las mismas están dentro del ámbito del poder y la autoridad delegada en ellas. *Id.*, págs. 281-282. En este esquema, nos corresponde como tribunal fiscalizar con rigurosidad las decisiones administrativas para asegurarnos que las agencias cumplan con sus funciones y que no se pierda la fe en las instituciones de gobierno. *Id.*, pág. 282.

La revisión judicial de decisiones administrativas abarca esencialmente tres áreas: (1) la concesión del remedio apropiado, (2) la revisión de las determinaciones de hechos de acuerdo con el criterio de evidencia sustancial, y (3) la revisión de las conclusiones de derecho. D. Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, 3ra ed., Colombia, FORUM, 2013, pág. 688. Ahora bien, es importante señalar que la revisión por parte de los tribunales en cuanto a las determinaciones de las agencias es limitada. La norma reiterada por nuestro Tribunal Supremo es que las decisiones de las agencias administrativas merecen deferencia judicial por la "vasta experiencia y conocimiento especializado sobre los asuntos que por ley se les ha delegado". *JP, Plaza Santa Isabel v. Cordero Badillo*, 177 DPR

177,186 (2009). Los tribunales debemos respetarlas "a menos que la parte recurrente establezca que hay evidencia en el expediente administrativo suficiente para demostrar que la agencia no actuó razonablemente". *Borschow Hosp. v. Jta. de Planificación*, 177 DPR 545, 566 (2009). Por ello, se ha planteado que "los tribunales no deben intervenir o alterar las determinaciones de hechos de un organismo administrativo si las mismas están sostenidas por evidencia sustancial que surja del expediente administrativo considerado en su totalidad". *Otero v. Toyota*, 163 DPR 716, 727-728 (2005). Así pues, en nuestra función como tribunal revisor debemos limitar nuestra intervención a determinar si la actuación de la agencia fue una caprichosa, arbitraria, ilegal o que constituye un abuso de discreción por ser irrazonable. *Murphy Bernabé v. Tribunal Superior*, 103 DPR 692, 699 (1975). Lo anterior responde a que "los procedimientos ante un organismo administrativo tienen a su favor una presunción de regularidad y corrección". *A.D.C.V.P v. Tribunal Superior*, 101 DPR 875, 889 (1974). No obstante, ello no constituye un ejercicio automático.

Por otro lado, en cuanto a la revisión de conclusiones de derecho, la norma es que son revisables en todos sus aspectos por este Tribunal. *Olmo Nolasco v. Del Valle Torruella*, 175 DPR 464, 470 (2009). Sin embargo, en *Vázquez v. Consejo de Titulares*, 2025 TSPR 56, 215 DPR ___ (2025), el Tribunal Supremo de Puerto Rico revisitó la deferencia que, según la LPAU, *supra*, los foros judiciales le deben otorgar a las conclusiones de derecho provistas por las agencias administrativas. Lo anterior, a la luz del marco jurídico provisto por el Artículo 4.5 de la LPAU, *supra*, sec. 9675, y lo resuelto por el Tribunal Supremo de los Estados Unidos en *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024).

En reiteradas ocasiones, nuestro máximo foro había sostenido que las conclusiones e interpretaciones de las agencias merecían gran consideración, y que la revisión judicial se limitaba a determinar si estas habían actuado arbitraria o ilegalmente. *Vázquez v. Consejo de Titulares*, *supra,* pág. 31. A pesar de lo anterior, advirtió que esta consideración no

equivalía a una renuncia de nuestra función revisora, sino que la interpretación de la ley "es una tarea que corresponde inherentemente a los tribunales". *Vázquez v. Consejo de Titulares*, *supra,* pág. 32. Además, expuso que, aunque el Artículo 4.5 de la LPAU, *supra*, sec. 9675, dispone que las conclusiones de derecho "serán revisables en todos sus aspectos por el tribunal", será deber de los tribunales revisar las conclusiones de derecho de las agencias en todos sus aspectos, guiados por los mecanismos interpretativos propios del Poder Judicial y no por la deferencia automática a las agencias. *Vázquez v. Consejo de Titulares*, *supra,* págs. 31-32.

**B**

Ante la crisis fiscal que atraviesa Puerto Rico, el 17 de junio de 2014 la Asamblea Legislativa aprobó la Ley Núm. 66-2014 también conocida como *Ley Especial de Sostenibilidad Fiscal y Operacional del Gobierno del Estado Libre Asociado*, 3 LPRA sec. 9101 *et seq.* (Ley 66-2014). Dicha pieza legislativa declaró como política pública la restauración del crédito público del Estado Libre Asociado sin tener que recurrir al despido de empleados públicos ni afectar las funciones esenciales de las agencias de gobierno. Por tal motivo, incluyó una serie de disposiciones como parte de las medidas de reducción de gastos en la Rama Ejecutiva, que aplican a las corporaciones públicas. Asimismo, se dispuso que dicha ley tendría primacía sobre cualquier otra, según establecido en su Artículo 3 y al amparo de la facultad delegada por la Constitución de Puerto Rico. 3 LPRA sec. 9102.

Entre las disposiciones establecidas en dicha Ley 66-2014 para tratar la crisis fiscal del país, se encuentra **la no concesión de beneficios económicos ni compensación monetaria extraordinaria a los empleados de las Entidades de la Rama Ejecutiva desde y durante la vigencia de esta.** Así fue pautado en su Artículo 11, que expone lo siguiente:

> (a) Desde y durante la vigencia de esta Ley no se concederán aumentos en beneficios económicos ni compensación

monetaria extraordinaria a los empleados de las Entidades de la Rama Ejecutiva, con excepción a lo establecido en el inciso (d) de este Artículo.

(b) Se considerará como aumento en beneficios económicos lo siguiente:

    **(i)    Aumentos de sueldo por años de servicio, servicio meritorio, retribución adicional por habilidades o competencia, y aumentos generales.**

    (ii)    Aumentos en aportaciones patronales para beneficios marginales, tales como plan médico, seguros de vida y otros seguros.

    (iii)    Aumentos en aportaciones a planes de retiro más allá de las establecidas en ley para los sistemas de retiro gubernamentales.

    (iv)    Aumentos en Bonos de Navidad, Bonos de Verano, o cualesquiera otras bonificaciones.

    (v)    Aumentos por ascenso o traslados, excepto que tal ascenso o traslado resulte en un ahorro neto para la Entidad de la Rama Ejecutiva, eliminando la necesidad de reclutamiento de un empleado neto adicional; siempre que, dicho reclutamiento hubiese cumplido con los requisitos para ocupar puestos establecidos en el Artículo 9 de este Capítulo.

    (vi)    Aumentos por reinstalación.

    (vii)    Pagos de diferencial en salario por condiciones extraordinarias o por interinatos, excepto que dicho diferencial resulte en un ahorro neto, eliminando la necesidad de reclutamiento de un empleado neto adicional; siempre que, dicho reclutamiento hubiese cumplido con los requisitos para ocupar puestos establecidos en el Artículo 9 de este Capítulo.

[…]

(d) No se considerará como aumento en beneficios económicos ni o compensación monetaria extraordinaria lo siguiente:

    (i)    Licencias con sueldo para estudios, seminarios, cursos o talleres siempre y cuando se suscriba un acuerdo legal donde conste que el empleado beneficiado se obliga a brindar servicios por un tiempo equivalente al doble del tiempo que le tome completar los estudios, seminarios, cursos o talleres y el deber de devolución de la licencia pagada en caso de incumplimiento;

    (ii)    Programas de becas para empleados;

    (iii)    Programas de ayuda al empleado;

    (iv)    Programas de cuido de niños;

    (v)    Planes de adiestramiento, capacitación y desarrollo hasta un máximo de seiscientos (600) dólares por empleado.

    (vi)    Los ajustes salariales y las compensaciones monetarias a los(as) empleados(as) públicos(as) del Departamento de Educación por concepto del cumplimiento con la Ley 158- 1999, según

enmendada, conocida como "Ley de la Carrera Magisterial".

[…] (Énfasis nuestro.) 3 LPRA sec. 9117.

Por otro lado, el 23 de enero de 2017 la Asamblea Legislativa también aprobó la Ley Núm. 3-2017 conocida como la *Ley para Atender la Crisis Económica, Fiscal y Presupuestaria para Garantizar el Funcionamiento del Gobierno de Puerto Rico* la cual reiteró los preceptos de austeridad fiscal de la Ley 66–2014. De igual manera, estableció como medida temporera de emergencia el no conceder aumentos en beneficios económicos ni compensación monetaria extraordinaria a los empleados de las Entidades de la Rama Ejecutiva, incluyendo las corporaciones públicas, desde y durante su vigencia. Pertinente al caso de marras, citamos su Artículo 7 a continuación:

> Desde y durante la vigencia de esta Ley, no se concederán aumentos en beneficios económicos ni compensación monetaria extraordinaria a los empleados de las Entidades de la Rama Ejecutiva, con excepción a:
>
> (a) Licencias con sueldo para estudios, seminarios, cursos o talleres siempre y cuando se suscriba un acuerdo legal donde conste que el empleado beneficiado se obliga a brindar servicios por un tiempo equivalente al doble del tiempo que le tome completar los estudios, seminarios, cursos o talleres y el deber de devolución de la licencia pagada en caso de incumplimiento;
>
> (b) Programas de becas para empleado;
>
> (c) Programas de ayuda al empleado;
>
> (d) Programas de cuido de niños;
>
> (e) Planes de adiestramiento, capacitación y desarrollo hasta un máximo de seiscientos dólares ($600) por empleado. No obstante lo anterior, con excepción de los programas de ayuda al empleado, y de los adiestramientos que brinda la Oficina de Capacitación y Asesoramiento Laboral y de la Administración de Recursos Humanos (OCALARH), la autoridad nominadora o su representante autorizado deberá considerar que las situaciones ántes provistas constituyen un aumento en beneficios económicos o compensación monetaria extraordinaria cuando ello resulte necesario para atemperar los gastos de la Entidad de la Rama

Ejecutiva al presupuesto aprobado o para superar una proyección de déficit operacional. La Ley 66-2014 dispondrá lo que es considerado como un aumento en beneficio económico o una compensación monetaria extraordinaria y a cuáles empleados le habrá de aplicar. Los convenios colectivos vigentes se extenderán conforme al Artículo 8 de esta Ley. 3 LPRA sec. 9397.

**III**

La Sra. Febus Marcano recurre a este foro revisor y en su recurso plantea que las citadas leyes en las que se basó la CFSE y la CASP para no atender su solicitud nada disponen acerca de las transacciones de personal como lo son las reclasificaciones. Incluso alega que la Ley 66-2014 no contempla como aumento en beneficio económico las transacciones de personal que correspondan a la obligación de la CFSE de remunerar correctamente a sus empleados, aunque ello conlleve un aumento de sueldo. Por tal motivo, concluye que la reclasificación de un puesto y la modificación de remuneración asignada debe ser evaluada en virtud de la sección 11.7 del Reglamento de Personal de la CFSE en lugar de los estatutos mencionados. Colegimos que, en virtud del derecho aplicable esbozado, no le asiste la razón a la parte recurrente.

Tal y como esbozamos anteriormente, tanto la Ley 66-2014 como la Ley 3-2017 expresamente establecen que desde y durante su vigencia no se otorgarían aumentos en beneficios económicos a menos que se cumpla con alguna de las excepciones precitadas en la Ley 66-2014. La solicitud de la Sra. Febus Marcano en cuanto a la reclasificación de su puesto, se presentó el 6 de octubre de 2016 cuando la Ley 66-2014 ya había entrado en vigor. También dicha solicitud representa un aumento de sueldo que conllevaría un aumento en beneficio económico según definido en el Artículo 11(b)(1) de la Ley 66-2014. Por consiguiente, es conforme a derecho la decisión de la CFSE en concluir que su solicitud no podía ser atendida en aquel momento y, de igual manera, el avalo de la CASP a esa decisión. Asimismo, es menester mencionar que, conforme a la jerarquía de las fuentes del derecho en Puerto Rico, es aplicable una ley por encima

del reglamento de una agencia gubernamental. Por lo que no es correcta la conclusión de la recurrente en cuanto a la aplicación del Reglamento de Personal de la CFSE.

Discutido lo anterior, añadimos que no surge del expediente que la recurrente haya alegado ni probado que le aplicaban algunas de las excepciones que la ley provee para exceptuarla de no otorgarle un aumento económico. Al no demostrarse que la CASP ni la CFSE hayan incurrido en error, ni haber actuado de manera irrazonable, confirmamos la determinación de la CFSE.

**IV**

Por los fundamentos anteriormente esbozados, confirmamos la decisión recurrida.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones